### LEROY v. CITY COUNCIL OF CHARLESTON.

1. A lot of land was devised to remain in the hands of the executors until they should settle and assure the same to trustees to receive the rents, &c., and pay the same to the sole and separate use of E. during her life, and then to transfer the same to such children of E., or the issue of such deceased child as E. should leave surviving her, the issue of deceased children to represent their parents ; and if she should have neither children, nor their issue living at her death, then to such person or persons as by the laws of this State shall be entitled to distribution of her estate. *Held,* that E. had a life-interest, and that the remainder over was contingent and not vested.

2. The executors having accordingly conveyed this land to a trustee in trust for the uses and purposes directed by the will, the legal title was in the trustee, and after his death, in his heir-at-law.

3. This land having been sold under proceedings to which E. and her children were parties, but not the living grandchildren of E., nor the heir-at-law of the trustee, *held*, on rule to show cause, that the purchaser was not bound to comply.

Before COTHRAN, J., Charleston, April, 1883.

The opinion fully states the case.

*Messrs. Hayne & Ficken,* for appellant.

*Mr. J. Barrett Cohen,* contra.

October 2d, 1883.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    At the sale of certain real estate, situated in the city of Charleston, under a consent decree pronounced by Judge Fraser in the above-entitled cause, Peter Tecklenburg became the purchaser at the price of $1,280, who failing to comply, a rule to show cause was issued against him by Judge Cothran, presiding, on March 9th, 1883.    To this rule the said Tecklenburg made return, admitting that he had refused to comply, and gave as a reason, that he was advised by counsel that the title offered was not good and marketable.    In support of this answer he submitted the following statements: "1. That the legal estate to said land is vested in the trustee, Francis Dupont, his successor or his heir-at-law; and neither the said Francis Dupont, or, if he be dead, his heir-at-law, nor any substituted trustee is a party to the proceeding under which the sale was made.    2. That there are *in esse* remaindermen, the grandchildren of the said Emma Leroy, who are not parties to the said proceedings.    3. That the purpose of said proceeding is not to effect a change of investment, but to destroy the trust estate, and scatter the *corpus* thereof.    4. That it is sought to apply one-half of the proceeds of sale in liquidation of a large arrearage of taxes, which taxes, under the law, are exclusively the debt of the life-tenant, and he prayed that the rule be dismissed with costs.

On hearing the rule and answer, Judge Cothran ordered that

it be made absolute; and further, that the proceeds of the sale, after payment of costs and expenses, be retained, subject to the further order of the court modifying the previous order of sale to that extent. Tecklenburg has appealed, assigning error, substantially, on the grounds stated in his answer to the rule.

The main question involved is, whether Tecklenburg could obtain a complete title under his purchase; whether a deed from the officer of the court, under the circumstances, could convey such a title. This is denied by the respondent to the rule, because, as he alleges, all persons interested in the land were not made parties to the proceeding under which it was sold. If this position is correct, the conclusion urged by the appellant would follow, because it is well settled, that to divest one of his interest in property of any kind by the judgment of a court, he must be a party to the proceeding, either in person or by a representative, otherwise the judgment is a nullity as to him. The precise point to be considered, then, is, whether all necessary parties were before the court when this consent decree was rendered by Judge Fraser.

The land originally belonged to Mrs. Heloise Boudo, who died in 1837, leaving of force her last will and testament, under which the said land, with the balance of her estate, was devised and bequeathed to the parties therein named upon certain terms and conditions. To ascertain the rights of the parties it will be necessary to consider the provisions of this will, and the codicil thereto. One Charles Edmondston, was the executor, and the testatrix directed that he should duly settle and assure to a competent trustee one moiety of her estate to certain uses, that is, to say, in trust to receive the rents, issues, income and profits thereof during the natural lives of Narcisse Leroy and Emma Leroy, his wife, (a daughter of testatrix,) and from time to time to pay the same to the said Emma and her assigns, for her sole and separate use, &c. &c. So that the said Emma Leroy shall not sell, mortgage, charge, or otherwise dispose of the same in the way of anticipation. And if the said Emma Leroy should survive her husband, then in trust to convey the said moiety to the said Emma, her heirs and assigns forever.

By a codicil, the testatrix afterwards changed somewhat the terms of this bequest as follows, to wit: She directed that the said one moiety should be settled and assured to the sole and separate use of the said Emma in the manner and upon the conditions mentioned in her will, but subject to the alterations made in the codicil. She then revokes so much of her will as directed the moiety to go to Emma absolutely, in the event that she survived her husband, and directs that said moiety shall be settled to the sole and separate use of the said Emma, notwithstanding her coverture, free from the direction, control or interference, debts or contracts of her present or any future husband, so that she shall not sell, mortgage, charge or otherwise dispose of her interest in the same by anticipation. And that the said interest shall be for the term of her natural life, and no longer. And after the death of the said Emma, then said moiety to be equally divided among such children as she shall leave surviving her, the issue of deceased children to represent their parents, and take shares accordingly. And if the said Emma should leave no children nor their issue living at her death, then said moiety was to go to such persons then living as by the laws of the State shall at that time be entitled to distribution thereof.

In April, 1841, Charles Edmondston, who had qualified as executor, conveyed by deed, reciting therein the will and codicil, to one Francis Dupont, one moiety of the lot of land now in controversy, to have and to hold the same unto him, his heirs and assigns forever, in trust nevertheless to have and to hold the same and to take and receive the rents, issues and profits of the same and every part thereof, &c., to the sole use of the said Emma, notwithstanding her coverture, free from the direction, control or debts of her husband, &c. And from and after her death, then the said moiety shall be equally divided among such children of the said Emma, or the issue of such deceased children, as she shall leave surviving her, the issue of such deceased children to represent their parents, &c. And if the said Emma shall leave neither children nor their issue living at her death, then to such person or persons as by the laws of the State shall then be entitled to distribution of her estate.

F. Dupont accepted the trust. He has, however, been dead

for some years. Narcisse Leroy, the husband of Emma, is also dead. The plaintiff, Emma Leroy, is the Emma mentioned in the will, and her children are all parties plaintiff with her. Some of these children have children, none of whom are parties. No trustee has been substituted for Dupont, nor has his heir-at-law been made a party. It is admitted that the lot is vacant and unproductive. It is claimed that it has been forfeited for non-payment of taxes, and the city council of Charleston has titles from the sinking fund commission. The plaintiff and the city council obtained a consent decree that the land should be sold and the proceeds divided equally. This last provision, as it has been stated, was modified by Judge Cothran's order, so that the proceeds of the sale should be retained in court subject to its further order. The position of the appellant is, that the heir of the deceased trustee and the grandchildren of the life-tenant, Emma, should have been made parties, which not having been done, a marketable title cannot be made to him. This raises the question as to the character of the interests of the different parties under the will, the codicil and the trust deed to Dupont.

There can be no doubt that the interest of Emma is a life-estate in equity. But what is the estate of the remaindermen? Is this a vested, or contingent remainder? The plaintiffs, under the authority of *Seabrook* v. *Gregg*, 2 *S. C.* 68; *Rivers* v. *Fripp*, 4 *Rich. Eq.* 276; *Williamson* v. *Berry*, 8 *How.* 495, and other cases of like character, contend that the children of Emma have a vested remainder, with a condition subsequent attached, by which this remainder may be defeated, it is true, but in advance of this defeat, no other persons except those before the court have an appreciable interest, and no others, therefore, need be made parties. Is this construction tenable?

It is true that the inclination of the courts is against contingent remainders, for good and sufficient reasons, and, in doubtful cases, the balance will always be turned against a construction which leads to their establishment; but where such remainders have been clearly created, founded upon the well-settled rules of law, they must be sustained. Persons owning property have the right to dispose of their acquisition as to them shall seem proper, and so long as they keep within the rules of law,

no court is invested with power to defeat this right. The general definition of a contingent remainder as found in Blackstone (and no better can be given) is, that it is "an estate in remainder limited to take effect either to a dubious and uncertain person, or upon a dubious and uncertain event." 2 *Bl. Com.* 169. The limitation here is "to such children of Emma Leroy, or the issue of such deceased children as she should leave surviving her, the issue of deceased children to represent their parents, and if she shall have neither children nor their issue living at her death, then to such person or persons as by the laws of this State shall be entitled to distribution of her estate."

It will be observed that the limitation is not to the children generally as a class, but to such children as shall survive her. This language is peculiar and seems significant. The event which is to determine the beneficiary, is survivorship. This is in the future, and is certainly an uncertain and dubious event. It may never take place, either as to a child of Emma, or as to the issue of a deceased child. Emma may outlive all of her descendants, children and grandchildren. In such case, among these there would be no remaindermen, and no such estate could ever vest. But even should this event happen, until it does take place, it is quite as uncertain who of the children, or of their issue, will be embraced among the survivors, as is the happening of the event itself. Thus the limitation is both to a dubious and uncertain person and upon an uncertain event. See the cases of *Dehon* v. *Redfern, Dud. Eq.* 118, and *Faber* v. *Police*, 10 *S. C.* 385.

In the first, Chancellor Harper, in speaking of remainders like this, used the following language: "They were to the children who should be living at the death of the daughters, respectively, or to the children of those who had died leaving children. Until the death of the daughters it must remain perfectly uncertain who will be the persons to take, and this is the definition of one species of contingent remainders." In the latter case, Mr. Justice McIver delivered the opinion of the court. In that case the language of the will was substantially the same as in this. The court held the remainder contingent. But the case is here

referred to especially on account of the able and conclusive reasoning of Justice McIver on the questions now before us.

The cases relied on by the respondent, *Rivers* v. *Fripp, supra,* and others, do not apply. In these cases, generally, there was an event fixed, which was to happen, or not happen, at a time beyond the termination of the life-estate, to wit, the majority of the remaindermen, and upon which the absolute character of the remainder was to depend. In such cases the courts have held that this was a condition subsequent, which might defeat the remainder already vested, and not a condition precedent, upon which it was to attach. The courts presumed this to be the intention of the donor, otherwise there would be a period, to wit, the time between the death of the life-tenant and the majority of the remaindermen, when no one would be entitled to the estate.

It is true that all of the cases relied on by the respondent are not characterized by this feature, and especially in the case of *Williamson* v. *Berry, supra,* is it absent. It is difficult to reconcile that case with the law, as seems to be settled in other cases ; and it is to be regretted that the learned court pronouncing the judgment in that case did not go deeper into this question. It will be seen, however, upon an examination of that case, that while the court expressed a very decided opinion upon the point involved here, yet that question was not raised in the grounds of appeal which carried the case up, and, therefore, was not really before the court for adjudication. But be that as it may, the weight of authority in our State is the other way, and in obedience to these we must hold, that the remainder here is a contingent remainder to such of the children of Emma Leroy as may survive her, and to the surviving issue of such as may be deceased at her death, the said issue taking the share which their parent would have taken in case of surviving.

It is further the opinion of the court, that the legal title of the property in question was in the trustee, Dupont, during his life, which, at his death, descended to his heir-at-law. This follows from the terms of the trust deed, and it must be so held unless the estate was executed by the statute. It is a familiar doctrine that the statute never executes a use while there is anything for the trustee to do. Here there were active and responsible duties

devolving upon the trustee. He was to receive and pay over the rents and profits, and he was to preserve the trust, so that the life-tenant could in no event sell, mortgage, charge or otherwise dispose of her interest by anticipation.

Now the questions arise, Should the grandchildren of Emma Leroy, known to be alive, have been made parties, as well as her children, and should the heir-at-law of the trustee, Dupont, have been before the court? In *Bofil* v. *Fisher*, 3 *Rich. Eq.* 1, the court said : " That the Court of Equity has the power to sell the estates of infants, remaindermen, whether vested or contingent, when they are parties before the court, is unquestionable." It further said : " The court has also power to bar by its decree for sale of property, the interest of unborn contingent remaindermen, and of contingent remaindermen, residing abroad, whose names and places of residence are unknown, and who, of course, cannot be made parties before the court." See, also, the case of *Vanlew* v. *Parr*, 2 *Rich. Eq.* 331. This is in accordance with the general rule in equity, that all who are materially interested in the subject of the suit, however numerous, that can be, ought to be made parties in the shape of either plaintiffs or defendants. *Trescot* v. *Smyth*, 1 *McCord Ch.* 301.

We think that the grandchildren in this case, at least those whose names and residences are known, should have been made parties. We think, too, that the proceeding was defective in the fact that the heir-at-law of the trustee was not summoned. The fee of this land was in him during his life, and at his death it descended to his heir-at-law. Without their presence, or the presence of a substituted trustee in whom the fee could vest, it is not in court, nor has it any representative here. Nor can it under the circumstances be conveyed to the purchaser. The proposed title to the appellant is then defective, wanting a material link—*Story Eq. Pl.*, §§ 207–211 ; *Hopkins* v. *Mazyck, Rich. Eq. Cas.* 263—and he is not bound to accept it. The other questions in the case, as to the destruction of the trust, and who should be responsible for the taxes, need not be considered.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the rule be discharged.